**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IRWAN CHANDRA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LYFT, INC.,

Defendant.

CIV. A. NO. _____

**CLASS ACTION COMPLAINT**

**I.   INTRODUCTION**

1. Lyft is a car service, which engages thousands of drivers across the state of New York who can be hailed and dispatched through a mobile phone application to transport riders. Lyft is based in San Francisco, California, and it does business across the United States, including extensively throughout New York.

2. As described further below, Lyft has misclassified its drivers, including Plaintiff Irwan Chandra, as independent contractors when they should be classified under New York law as employees. Based on the drivers' misclassification as independent contractors, Lyft has unlawfully required drivers to pay business expenses (including but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of New York Labor Law, Article 19, §§ 193 and 198-b. Lyft has also failed to guarantee and pay its drivers minimum wage for

all hours worked and it has failed to pay overtime premiums for hours worked in excess of forty hours per week in violation of NYLL Article 6 §§ 190 et seq., Article 19 §§ 650 et seq., and the supporting New York State Department of Labor Regulations. Lyft has also failed to comply with notice and recordkeeping requirements in violation of NYLL, Article 6, 195(1) and failed to provide accurate wage statements in violation of NYLL, Article 6, 195(3).

3.  Plaintiff brings these claims on behalf of himself and all other similarly situated drivers pursuant to Fed. R. Civ. P. 23.  He seeks recovery of damages for himself and the class, as well as declaratory and injunctive relief, requiring Lyft to reclassify its drivers as employees in New York.

## II.  **PARTIES**

4.  Plaintiff Irwan Chandra is an adult resident of New York City, New York, where he worked as a Lyft driver from January 23, 2018, until August 28, 2019.

5.  The above-named plaintiff has brought this action on his own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Lyft drivers in New York.

6.  Defendant Lyft, Inc. ("Lyft") is a Delaware corporation headquartered in San Francisco, California.

## III.  **JURISDICTION**

7.  This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Lyft is a California citizen, incorporated in Delaware and the putative plaintiff class reside primarily in New York; there are more than 100 putative class members; and the

amount in controversy exceeds $5 million.  The putative class, including Plaintiff Chandra, have worked throughout the state of New York, including in New York City.

### IV.     STATEMENT OF FACTS

8.      Lyft is a San Francisco-based car service that provides transportation service in cities throughout the country, including in New York, via an on-demand dispatch system.

9.      Lyft offers customers the ability to hail a car service driver on a mobile phone application.

10.     Although classified as independent contractors, Lyft drivers are employees under New York law.

11.     Lyft requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance.  Lyft retains the right to terminate drivers at any time in its discretion. Lyft may terminate a driver if the driver behaves in a way that Lyft believes is inappropriate or has violated one of Lyft's rules or standards. Drivers are also subject to termination based on Lyft's system of using customer rating feedback; drivers can be terminated in Lyft's discretion if Lyft deems their customer ratings to be inadequate.

12.     Drivers perform a service in the usual course of Lyft's business, since Lyft is a car service that provides transportation to its customers, and drivers such as Plaintiff perform that transportation service.  Lyft holds itself out as a transportation service, and it generates its revenue primarily from customers paying for the very rides that its drivers perform.  Without drivers to provide rides for Lyft's customers, Lyft would not exist.

13. When driving for Lyft, Lyft drivers are not engaged in their own transportation business. Instead, when driving Lyft customers, drivers wear the "hat" of Lyft. Customers cannot request specific Lyft drivers; instead, Lyft assigns particular rides to drivers.

14. Lyft does not require drivers to possess any skill above and beyond that necessary to obtain a normal driver's license.

15. Drivers' tenure with Lyft is for an indefinite amount of time.

16. Lyft provides the drivers with the primary instrumentality with which they can perform services for Lyft because Lyft only derives a benefit from the drivers' labor when they use Lyft's software.

17. Lyft sets the rate of pay for drivers' services and changes the rate of pay in its sole discretion. If a rider does not pay, it is Lyft—not drivers—who bear the loss.

18. At times, Lyft has deducted money from drivers' fares to cover the cost of a Lyft-issued iPhone, which drivers use to run Lyft's software and accept ride requests. At other times, drivers have been required to provide, and pay for, their own phones.

19. Lyft tracks drivers' location in real time through the Lyft app and provides customers with an estimated time of arrival.

20. If a driver can no longer carry out a ride after accepting the job, Lyft, rather than the driver, finds a replacement.

21. Drivers must undergo background checks as a prerequisite to driving for Lyft.

22. Drivers' vehicles must meet Lyft's quality standards, which it determines and may change at any time at its sole discretion.

23. Lyft monitors drivers' performance and may suspend or terminate drivers who do not maintain high customer satisfaction ratings or who engage in other conduct that Lyft may determine constitutes grounds for suspension or termination.

24. Lyft drivers are engaged in interstate commerce.  At times, drivers transport passengers across state lines.  Furthermore, drivers are engaged in interstate commerce as they routinely transport passengers who are within the flow of interstate commerce, traveling to or from destinations out of state, including arriving at or leaving train stations, bus stations, and airports.

25. Lyft does not reimburse drivers for any necessary expenses they incur while working for Lyft, including, but not limited to the cost of acquiring and maintaining their vehicles, gas, insurance (all of which can be reasonably estimated based upon the IRS vehicle reimbursement rate), as well as phone and data expenses for running the Lyft application.  Drivers incur these costs as a necessary expenditure to work for Lyft, and their payment of these costs are effectively improper deductions from the drivers' wages.  See NYLL, Article 19, § 193 (3)(a) ("No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages…."); NYLL, Article 19, § 198-b ("it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."). On average, Mr. Chandra incurred

an average of approximately $610 in business expenses each week that he drove for Lyft.

26.   Lyft has violated NYLL, Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations by failing to assure that drivers make the applicable minimum wage for all hours worked, particularly after accounting for their expenses and other deductions taken from their pay (and also not counting tips they receive). The hours that drivers such as Plaintiff Chandra have worked include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride. On average, Mr. Chandra worked 28.8 hours per week and made $695 per week (including tips) before taking into account business expenses that averaged to $610 per week.

27.   Lyft has also violated NYLL, Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations by failing to pay its drivers the appropriate overtime premium of time-and-a-half their regular rate of pay for all overtime hours worked beyond forty per week. Mr. Chandra has worked more than forty hours per week at various times since he began driving for Lyft and was never paid the appropriate premium for hours worked beyond forty per week, including 51 hours during the week of May 20-26, 2019; 42 hours during the week of May 27-June 02, 2019; 49 hours during the week of June 3-9, 2019; 50 hours during the week of July 8-14, 2019; 70 hours during the week of July 15-21, 2019; 58 hours during the week of July 22-28, 2019; 44 hours during the week of July 29-August 4, 2019, 49 hours during the week of July 30-August 5, 2018; 53 hours during the week of August 5-11, 2019; 56 hours during the week of August 12-18, 2019; and 63 hours during the week of August 19-25,

2019. The hours that drivers such as Mr. Chandra has worked include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

## V.    CLASS ACTION ALLEGATIONS

28.    The class representative, Plaintiff Chandra, has brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Lyft drivers who have worked for Lyft in New York.

29.    The class representative and other class members have uniformly been misclassified as independent contractors.

30.    The members of the class are so numerous that joinder of all class members is impracticable.

31.    Common questions of law and fact regarding Lyft's conduct exist as to all members of the class and predominate over any questions affecting solely any individual members of the class.  Among the questions of law and fact common to the class are:

   a. Whether class members have been required to work under Lyft's direction and control;

   b. Whether the work performed by class members—providing transportation service to customers—is within Lyft's usual course of business, and whether such service is fully integrated into Lyft's business;

   c. Whether class members are engaged in an independently established business or occupation while they are transporting Lyft customers;

      d.  Whether class members have been required to bear the expenses of their employment, such as expenses for their vehicles, gas, smart phone, and other expenses;

32. The class representative is a member of the class, who suffered damages as a result of Lyft's conduct and actions alleged herein.

33. The class representative's claims are typical of the claims of the class and he has the same interests as the other members of the class.

34. The class representative will fairly and adequately represent and protect the interests of the class. The class representative has retained able counsel experienced in class action litigation and particularly in the allegations included here. The interests of the class representative are coincident with, and not antagonistic to, the interests of the other class members.

35. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Failure to Reimburse Expenses

As set forth above, Lyft has misclassified its drivers in New York as independent contractors, in violation of NYLL, Article 6 §§ 190 *et seq.*, NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations. As a result of this misclassification, drivers have improperly been required to bear the expenses of their employment (such as expenses for maintaining or leasing their vehicles, insurance, gas, phone data charges, and other expenses), in violation of NYLL, Article 19, §§ 193 and 198-b, and the supporting New York State Department of Labor Regulations.

## COUNT II

### Failure to Pay Minimum Wage

By failing to ensure that Lyft drivers receive the full New York minimum wage for all hours worked, Lyft has violated NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

## COUNT III

### Failure to Pay Overtime

By failing to pay Lyft drivers time-and-a-half for all hours worked in excess of forty per week, Lyft has violated NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

## COUNT IV

### Failure to Provide Accurate Wage Statements

Lyft has violated NYLL, Article 6, 195(3), and the supporting New York State Department of Labor Regulations by failing to provide Lyft drivers with accurate statements listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

## COUNT V

### Failure to Comply with Notice and Recordkeeping Requirements

Lyft has violated NYLL, Article 6, 195(1), and the supporting New York State Department of Labor Regulations by failing to provide Lyft drivers with a written notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

WHEREFORE, Plaintiffs request that the Court enter the following relief:

a.  A declaratory judgment that the Plaintiffs and class members are employees, not independent contractors, under New York state law;

    b.    Injunctive relief ordering Lyft to comply with New York law;

    c.    Certification of a class pursuant to Fed. R. Civ. P. 23;

    d.    An order requiring Lyft to provide a complete and accurate accounting of all the wages and reimbursement of expenses to which Plaintiffs and members of the class are entitled;

    e.    An award of damages for all wages, reimbursement of expenses, and liquidated damages that are due to Plaintiffs and members of the class because of their misclassification as independent contractors under New York law;

    f.    An award of prejudgment interest pursuant to CPLR § 5001(a);

    g.    Attorneys' fees and costs; and

    h.    Such further relief as the Court deems just and proper.

Dated: August 23, 2021            Respectfully submitted,

IRWAN CHANDRA, individually and on behalf of all others similarly situated,

By his attorneys,
/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, NY Bar No. 2971927
Anne Kramer, *pro hac vice* anticipated
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, akramer@llrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 23, 2021, she filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system

                                              /s/ Shannon Liss-Riordan
                                              Shannon Liss-Riordan